United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 22, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-51335
Summary Calendar
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

JOSHAWA CLAY PHIPPS,

                                        Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Western District of Texas
USDC No. W-02-CR-132-1
--------------------

Before HIGGINBOTHAM, DAVIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

     Joshawa Clay Phipps appeals the sentence he received on his guilty-plea convictions of conspiracy to manufacture methamphetamine (meth) and possession of meth with intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(a)(1). We AFFIRM.

     In July 2002, police seized 17,368 pills from a car in which Phipps was a passenger.  The pills contained a total of 1042

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

grams of pseudoephedrine.  The officers also found 99.22 grams of meth on Phipps's person.

To determine Phipps's base offense level under the Sentencing Guidelines, the presentence report (PSR) used the guideline Drug Equivalency Tables to convert the pseudoephedrine and the meth to their marijuana equivalents, on authority of U.S.S.G. § 2D1.1, comment. (n.10)(note 10).  The PSR notes that the pseudoephedrine converts to 10,420 kilograms of marijuana and the meth to 198.44 kilograms of marijuana.  The PSR determined that Phipps's base offense level was 36, based on the pseudoephedrine, being equivalent to more than 10,000 but less than 30,000 kilograms of marijuana.

At sentencing Phipps argued that his base offense level should be 32, based on his estimate that the pseudoephedrine could have been used to manufacture only 880 grams of meth.  See U.S.S.G. § 2D1.1(c)(4)(at least 500 grams but less than 1.5 kilogram of meth).  The district court agreed with the PSR and sentenced Phipps accordingly.  Phipps now contends that the district court reversibly erred.

A defendant's base offense level for a violation of § 841(a)(1) is determined by computing the quantity of drugs involved in the offense for which he is accountable.  See § 2D1.1(c)(Drug Quantity Table); United States v. Vital, 68 F.3d 114, 117-18 (5th Cir. 1995).  If more than one controlled substance is involved, however, note 10 directs that the Drug

Equivalency Tables set forth in § 2D1.1 be used to determine the appropriate offense level. This distinguishes Phipps's case from three cases upon which he relies, in which the offense levels for meth offenses were based on the quantity of meth that (it was estimated) could have been produced using the amount of a single listed chemical that each defendant possessed. The fact that in Phipps's case the district court did not add to the total the meth's equivalent of approximately 200 kilograms of marijuana is irrelevant, because it had no effect on the determination of Phipps's base offense level.

Phipps argues that the rule of lenity requires that the pseudoephedrine be converted to meth, based on his estimate of the quantity of meth which could be manufactured. This lacks merit because his base offense level would have been 36 if he had been charged with and convicted of having possessed the pseudoephedrine alone instead of the meth offenses. This is because the relevant Drug Quantity Table, § 2D1.11(d), provides a base offense level of 36 for offenses involving at least one kilogram of pseudoephedrine, and Phipps concedes that he is accountable for 1.042 kilogram thereof.

AFFIRMED.